May it please the Court, I am Charlotte Hall for the appellant in this case, Ms. Billie June Woods. The two issues on appeal here both center around an ALJ's duty to include a rationale for the findings in this decision. The first issue is the ALJ's error in summarily dismissing the favorable disability determination of the state of North Carolina finding Ms. Woods eligible for Medicaid. Now the District Court erred by finding that the ALJ adequately addressed the decision by only noting that it was not binding and that because the programs were different, it was possible to be approved for one and not the other. Notably in the Fourth Circuit, the states that have not adopted the Medicaid expansion of the ACA, the rules used for determining disability for purposes of Medicaid are the same as those of securities. They use the five-step sequential evaluation process. Now this Court and District Courts in this circuit have held that giving the disability decision of another governmental agency, little weight because it is not binding, is not sufficient. It does not satisfy the ALJ's duty to explain why the other governmental agency's decision is not supported. Such perfunctory dismissal does not explain based on the case's particular facts why the disability rationale of another governmental agency is not supported by the evidence. It prevents meaningful judicial review. Now given this Court's precedent in Byrd v. Commissioner requiring Social Security to give VA ratings substantial weight absent clear reasons for deviation, even though the reasons are probably similar, state Medicaid decisions in the Fourth Circuit should be accorded the same treatment as they're based on the same rules as Social Security's, but at the very least, as this Court noted in Deloach v. Heckler, SSA adjudicators need to sufficiently articulate cogent reasons for the weight assigned to these determinations. Now the error in this case is particularly harmful because it is one where the facts would support giving the Medicaid decision greater weight. It is a decision that includes both a legal rationale as well as a citation of the facts relied upon to make it. And the state correctly pointed to a treatment history of significant pain, stiffness, weakness, and numbness in multiple joints, as well as positive blood tests for inflammatory factors, which is consistent with her inflammatory arthritis as well as her osteoarthritis. Now the physical examinations that were cited by the state hearing officer also note the slow and unsteady gait that she displayed at her consultative examination, which was ordered by Social Security. And the hearing officer noted that this was apparent at her Medicaid hearing as well. Does your whole argument rest on whether or not we would hold the weight we would give to the North Carolina disability determination? A particular weight, do you mean? Yes. I thought you had freestanding arguments. Yes, ma'am. I think that what we would support is the same treatment as is given to VA disability determinations. But even if it is not accorded a specific weight, at least some type of explanation that refers to reasons which are specific to the case. Here the ALJ did not discuss the substance of the Medicaid decision. Okay, but what if there hadn't been, I mean, do you have a case if there hadn't even been a disability determination? A Medicaid decision, yes, ma'am. Yes, okay. Yes, ma'am. And you're going to get to that? Yes, ma'am. Right. That centers around the second error, which is the lack of a function-by-function assessment in the case. But going back quickly to the Medicaid decision, the Medicaid decision also correctly referenced the treating physician statement that she was not capable of light or even sedentary work and noted these issues with falling, issues with instability on exam, her history of falls, fracturing because of her falls, and that she showed problems trying to perform walking and standing maneuvers on exam, as well as her decreased grip strength, which was a fact that the ALJ did not cite to in his own decision, and that these factors, this limited lifting, limited ability to walk and stand for prolonged periods, was consistent with a sedentary RFC. And given her age, education, and past work history in manufacturing textiles, that would direct to finding a disability. Now the ALJ had the same reports in front of him, but came to a vastly different conclusion that she could perform medium work, which is two steps above sedentary. Thus the lack of explanation as to why he came to such a different conclusion was harmful, given the Medicaid's in-depth discussion of and consistency with the facts. Well let me read you from the government's brief about how they respond to that. They say that the ALJ statement with respect to the Medicaid decision is, quote, independent and distinct enough to make it possible that even a disabled Medicaid recipient can be They say that that's an entirely correct statement of the law, and that's the reason for the ALJ's rejection of the Medicaid evaluation. What's wrong with that? The problem with that is that both of the reasons given, the systems are different, it's not binding, are boilerplate. They could apply to any case. None of these cases, in any of our cases, are the Medicaid decision binding. The issue is to address the particular facts in the case. Did the Medicaid decision put forth a rationale? Sometimes Medicaid decisions can be summarized, and that would be an instance where the ALJ would be perfectly justified in saying there isn't really a legal rationale here. The Medicaid decision does not indicate the facts which were cited to. So it doesn't really give us any insight. So if the ALJ had said, I hear you with respect to the state Medicaid decision, but that decision is based on evidence to which I accord little weight, as opposed to the conclusion, would that be sufficient? I would say there would have to be a little bit more than that. Citations to specific evidence. For instance, say the Medicaid decision covered a very different period of time. It was approved, that the individual was approved years before the ALJ addressed the case, and there was years of additional evidence showing that the individual had improved. That would be something the ALJ could point to and say that it's not really appropriate to give this greater weight because it's different time periods, it's different impairments. Here we have a Medicaid decision and an ALJ decision that are only separated by four months. They both deal with the 2013 and 2014 evidence that was in the file before the ALJ, and the ALJ doesn't give any real specific explanation for why the Medicaid determination isn't supported. It does not mention even that she was found only capable of sedentary work, which is more The citations are just completely boilerplate. Now, if the Medicaid decision had been itself a boilerplate decision and the ALJ noted that in his decision, that would be acceptable. But this isn't a boilerplate decision. The Medicaid officer went into great detail talking about the facts of the case and why he felt that a sedentary RFC was appropriate based on her exams as well as her treating physician statement. I thought in response to my earlier question, you had said that even if the Medicaid decision, we didn't give it weight, or we didn't say that the ALJ here had to give more weight than it did, that you would still claim that there was error in what the ALJ did. Is that correct? Yes, ma'am. That's based on Are you going to make that argument? Yes. That's based on the lack of explanation. There's a series of cases in Social Security related to Social Security matters that have been before this court where the court has faulted Social Security ALJs for not giving an adequate explanation. For instance, in Masseau and Monroe and Patterson. These are all cases in the last couple of years where it's noted that the court can't meaningfully review the ALJ's rationale if he doesn't discuss case-specific reasons for making findings. Here, just noting that the decision is not binding and that it is a different program, so it's not something that has to control Social Security doesn't give us any consistency. Going back to that prior, let me try one more time. Yes, ma'am. Pretend there is no prior decision. Is the ALJ opinion here improper? Yes. Why? That's because I don't need an explanation of why they don't follow the other decision, because there is no other decision. So why is it independently improper? It's independently improper because the ALJ failed to perform a function-by-function analysis as this court requires under Masseau, which is based on Social Security's own rulings. The ALJ, Ms. Woods testified she could only lift about three to four pounds, that she could only stand or sit about 20 minutes at a time due to pain exacerbation, and her notes show that she's consistently complained of pain related to activities exacerbating it, standing, walking, sitting, lifting, and her ability to use her hands. The ALJ's RFC for exertionally demanding medium work is inconsistent with her testimony, but the ALJ doesn't explain why her testimony isn't supported. The ALJ doesn't say that even though he acknowledges there's evidence in her favor, why that evidence does not indicate that the RFC should be more limited. For instance, in her case, she was noted at SSA's consultative examination to have a zero grip strength in her right hand and only six to ten kilograms in her left hand. The ALJ found that she could lift 50 pounds. There's also other instances of limited grip noted, as well as the fact that lifting exacerbates pain even when she has the strength to do it. The ALJ does not put that together. There's no logical bridge between the facts cited and the medium RFC. Additionally, the ALJ noted that at the consultative examination there was a slow shuffling gait, that she had trouble performing the standing and walking maneuvers. There's no logical bridge between why she would then not be more limited in standing and walking and the RFC. He gave her the full standing and walking requirements of a medium RFC, which are exertionally demanding. Essentially, the ALJ's decision is a quotation to the medical record and then a conclusion that she can perform medium work, but there's not a bridge explaining why all of the evidence that's in her favor, the treating physician opinion, the specialist opinion, the consultative examiner, that all of these things, as well as her treatment notes, which consistently document the same type of exacerbations from exerting herself. Why that doesn't justify a less limiting RFC. This is illustrated by the ALJ's treatment of Dr. Ashaim's opinion, the treating physician. He noted that it was given little weight because it was inconsistent with the record, but he doesn't point to what is inconsistent with Dr. Ashaim's opinion. Dr. Ashaim documented joint deformities, nodes in her hands, limited ability to use her hands, that she had a history of falls. She actually fell and fractured her left upper extremity because she was unstable on her feet. And the ALJ's finding that it's just not consistent without explaining why all of these things that support Dr. Ashaim's opinion should not be given greater weight is problematic. And as this court noted in Radford v. Colvin, giving greater weight to non-examining opinions over all of these examining opinions that we have in the file raises red flags because the people who actually compiled the record, Dr. Ashaim, Dr. Burgess, Dr. DeWitt, these people have actually had an opportunity to see the claimant and examine her. And all of these opinions are in her favor. They all found that Dr. DeWitt found she was not going to be able to go back to her past relevant work. It was too demanding for her. And the ALJ returned her past relevant work. Dr. Burgess noted that her pain functionally limited her, that it made it difficult for her to perform simple standing, walking maneuvers on exam. And he found she could perform the full range of medium work for standing and walking. Dr. Ashaim limited her to less than 10 pounds of lifting and less than an hour in an eight-hour workday of standing and walking with only five to ten minutes at a time and cited her joint deformity, her joint swelling, and her history of dropping things. These are things that don't just appear in the treating physician's statement for the first time. These are things which are corroborated in Dr. Ashaim's treatment notes. He noted she's now getting to the point where she's dropping things. He noted that she had a weak grip. The ALJ found that your client made an adverse credibility finding with respect to your client? Yes, ma'am. And have you preserved the argument that that's error? No, ma'am. The way that it was made, the rulings on credibility, Social Security has since amended those and found that they don't really accurately reflect the regulations which talk about supportability versus credibility. So we phrased our argument in terms of how that, although correctly, credibility is the word that was used in the ruling at the time that the ALJ rendered the decision. The reasons that are given for credibility which are tied up with this feeling that her testimony should not be accepted are not supported by the evidence. The ALJ said that her ability to perform intermittent housework, do her finances, spend time with her family, shop for groceries, that that was inconsistent with a person not being able to do medium work. But as this court noted in Lewis v. Berryhill, those are very undemanding activities. Those are activities that are not inconsistent with total disability. They're certainly not inconsistent with sedentary work. And general credibility dispersions don't constitute a function-by-function assessment. This has been noted in several district court decisions where this ALJ behavior has been observed. And the court noted, as the court noted in Mascio, ALJs don't need to compare people's pain to the RFC. Their pain needs to be factored in. And Ms. Woods repeatedly noted in her medical treatment notes and testified that her ability to perform housework was limited by pain, that she had to break it up into increments. And that's not something that's consistent with full-time work, having to take breaks, sit down, lie down, in between doing some sweeping and some dishes. Additionally, the other reason the district court found that the ALJ performed a proper function-by-function assessment was that it was okay for the ALJ to reference the state agency examiner's opinion. And because the state agency examiner performed a function-by-function assessment, it could be incorporated by reference. This is problematic for two reasons. Number one, because in Radford v. Colvin, this court rejected the concept of analysis by proxy. It's the ALJ's duty to evaluate the evidence and provide a logical bridge between the evidence and its functional conclusions, not incorporate by reference and rubber stamp the state agency's previous denial. Notably, the state agency physician that is not examining that was referenced by the ALJ, Dr. Clayton, included notes in his summary that she had difficulty tandem walking, squatting, and had intact strength on some exams, but there's no function-by-function, there's no logical bridge as to why he admitted she had to have help from the doctor to stand up from squatting at her exam for Social Security, and why she had difficulty performing heel-toe walking and tandem walking, why that then means that she can do medium work. So even if it were proper for an ALJ to incorporate by reference a non-examining denial that was given at the initial level, it's not something that could be done in this case because there's not a good explanation given by that non-examining physician as to why medium work is appropriate, especially in light of all the expert opinions that she's not able to do medium work, her rheumatologist, her treating physician, as well as Social Security's non-consumptive examiner noting that she had difficulties with these simple maneuvers on examination. Thank you. Thank you. Good morning. My name is Leo Montenegro, appearing for the defendant, Appali, Acting Commissioner of Social Security. Your Honor, I have to start out by pointing out that this case really involves the functional limitations assessed by the ALJ. The claimant naturally disagrees with those functional limitations, but doesn't really tackle the evidence head-on. The statute that I'll remind you requires that judicial review consists of determining whether substantial evidence supports the ALJ's findings. Here, claimant is looking at procedural problems, asserted procedural problems with the ALJ's findings, and saying that they don't make sense or questioning the expertise of the ALJ or the doctors, faulting them for lack of explanation. That's one way to resolve, I guess, evidentiary incompatibilities, but in these cases, the ALJ's decision should be accorded deference due to the substantial evidence standard. So what deference is the state court entitled to? Well, Social Security casts a broad net when looking for evidence of disability, and it does include consideration of a state disability decision. The state disability decision here, however, didn't say anything that the ALJ didn't already consider. As far as I can see, I'm not sure. While I concede that the ALJ was supposed to consider the state disability decision, I don't know what else the ALJ could have said here. The state disability decision essentially was a finding of disability by the state for the purposes of Medicaid, and then citation to some evidence. They didn't identify the evidence, the doctor's reports by name, but it's pretty clear who they were talking, who the decision was talking about when they talked about the treating physician or the consultative examiners. We have those reports in the record, and the ALJ did consider those doctors. So even though the state disability decision did rely on those particular doctors, the ALJ conducted its own independent analysis of that medical evidence. But you know, when you've got two fact-finding people, bodies, from two different governments, it seems when they reach different conclusions on the same issues, then the reason for the difference becomes very important. Would you agree with that? Yes, Your Honor. I think that... Certainly a claimant's entitled to some explanation of why this government says this and this government says the opposite, particularly when they're going to end up being denied their Social Security. Your Honor, I think that certainly raises questions, and that's why Social Security ruling 0603P, which I believe is the basis for the claim here, that ruling said that an ALJ, an adjudicator for Social Security, should consider and explain that consideration of that other governmental disability determination. But I just don't know what else the ALJ could have said here. The important part of that decision... Can you say anything that doesn't tell you there's a problem? No. I think the ALJ did say something. I mean, it's wrong to say... I don't have to go by what they said. That doesn't tell you anything. It... ALJ didn't just say that. The ALJ said each program is independent and distinct enough to make it possible that even a disabled Medicaid recipient can be denied SSA benefits. That's just a fancy way of saying I don't need to agree with that. Right. Yes. Absolutely, Your Honor. That's not enough. I don't know that that's enough. I think it's on a case-by-case basis, because as my opposing counsel conceded, different decisions could say different things that a blanket rule probably shouldn't be applied, because as my opposing counsel said, I believe... Now, I'll paraphrase, of course, because I don't remember exactly what she said, but it would depend on the... Well, I guess the bottom line is doesn't the AL... Or maybe you don't agree with this, but doesn't the ALJ have to say, I don't agree with this. It's not binding on me, and here's why. And that's what's missing here. Or is it? I don't think that's missing. Okay. Where is it? I think it's in his decision at page 29, where the ALJ did explain page 29 of the Administrative Record, Your Honor, I'm sorry, where the ALJ explained why, and that why might be dissatisfying at first blush, but it might actually just be the truth, because the ALJ did look at the underlying medical evidence. The disability decision by North Carolina for Medicaid purposes was based on certain medical reports, and the ALJ also looked at those medical reports, and I'll agree, they're subject to interpretation. I don't think that they really pointed one way or another, but the ALJ actually had more evidence in front of him, more medical evidence, that apparently the Medicaid decision didn't talk about, or at least maybe didn't have in front of it at all. So for the purposes of the ALJ having to explain his consideration of the Medicaid decision, the ALJ's discussion of the underlying medical evidence and the ALJ's acknowledgement, and it might be unsatisfying, but it's true, that these are different programs, different directions. I think certainly ALJ didn't say it, but I think it's implicit, and it's clear that Medicaid is about providing medical care. Social Security is not in the business of providing medical care, providing funding for that. Social Security provides, excuse me, monetary benefits. And also, on top of that, the ALJ noticed that the decision itself, the Medicaid decision itself, emphasized, agreed with him by saying that, quote unquote, it in no way affects any pending or future Social Security claims. So it's not just the ALJ saying that this isn't a Social Security decision. It's also the Medicaid decision itself. So both sides of the coin there are saying this is not a Social Security decision. It might be based on the same standards, but this is a state government making that determination. It has nothing to do with Social Security. It says it has nothing to do with Social Security, and Social Security itself cannot absolve itself of its responsibility to apply its rules to the evidence that's before it in its own proceedings. Social Security agrees that it will consider this evidence, that it might provide insight. The ALJ did so here, explaining everything that that decision covered, but there's nothing further. I don't think it can be added in the ALJ's explanation of that determination. Nothing substantive anyway. So I would submit that what is there is enough. Now, part of Klayman's argument is that BIRD somehow controls in this case, or at least should be extended to cover this case. Again, this is a different factual situation. Putting aside for a moment that BIRD was a VA benefits decision, again, another government agency, albeit federal in this case, again, with a different federal purpose, which I think is largely providing medical care. BIRD was about a very specific situation in which the decision at issue informed the reader about the disability during the alleged period. So in BIRD, there was a what they call a closed period of time after the expiration of Social Security insurance, during which the ALJ in that case said there's no evidence during the relevant period. The VA decision came afterwards and referred to and contained a summary of evidence about how, yes, this claimant was disabled, at least from the VA's point of view, during that past time. So in that case, there was actual evidence, information in the VA decision that related back to the relevant period and that the BIRD court felt the ALJ should have considered, but didn't, at least not properly. That's not the case here. We're looking at all of the evidence that was mentioned in the Medicaid decision in this case, and the ALJ did address it, and the ALJ did explain it. So BIRD legally and factually doesn't really apply here. The legal part, which I guess I should get to, is that it's about, again, the VA decision and the assumption that VA benefits are similar enough to Social Security that it's worth, according to that decision, substantial wage. That's not the case here. Deloach did consider state disability decisions. I don't think they were Medicaid decisions. I have to address this because my opposing counsel raised it, saying that Deloach provided that consideration of a state disability decision. I don't think Deloach says that. Deloach says that in remanding the case to the ALJ, the Deloach court said that the ALJ should explain his conclusions, not explicitly stating that the ALJ should explain the consideration or give reasons for the consideration of that state disability decision in that court. So Deloach doesn't really speak directly to this case. The commissioner agrees that the ALJ should have considered and should have looked into the Medicaid decision to see if it contained anything useful to explain that consideration, and that happened here. Again, I don't know about the wisdom of having a broad rule to cover the different types of governmental disability decisions, non-social security government decisions, given that we're already talking about VA and BIRD, state disability in Deloach, and Medicaid in this case, and that all those decisions might have varying degrees of relevance to the cases that they're in, each case being highly individualized because of the different medical problems that people experience. So I think it's safe to say that in this case, the ALJ was supposed to consider it and did, and that the reasons were tailored for this case, and that they applied here, and that they covered the necessary issues in this case. Can I ask you about the second part of the argument, the RFC issue? I will concede, I think, that the ALJ did a pretty good job summarizing the relevant medical evidence, but as your opponent points out, the problem it appears to be is that there's nothing linking that evidence to the ultimate conclusion of the ALJ that the petitioner in this case could actually do medium work on a full-time basis. So where is that in the record? Your Honor, that would be State Agent's position, Dr. Clayton, at page 77 of the record, and the ALJ at page 28 of the record in this decision accorded Dr. Clayton's opinion, great weight. Dr. Clayton said that the claimant, opined that the claimant could lift and carry the requisite amount of weight for medium work. Was he the only doctor that never saw the claimant? Is that correct? There were two, I believe. Did Dr. Clayton ever see the claimant? No, no. Dr. Clayton was the State... Were there doctors who did see the claimant? Yes. And did they support her claim here? I think there was one who did, and the others, I think, in all fairness, are subject to interpretation. Her treating physician, Dr. Ashan, at pages 770 to 772, filled out a form report where he said that the claimant could not work or could not specifically sit for even one hour in an eight-hour day and could not sit or stand for even one hour in an eight-hour day, which I don't know how to interpret that. It seems to suggest... One consecutive hour. Have you ever tried standing for an hour? I don't think I can do that. No, it's one hour total, Your Honor, in an eight-hour day. I think he said that she could do it for 10 to 15 minutes at a time, if I remember correctly. That's at page... His report's at pages 770 to 772. Yeah, got it. Thanks. So the ALJ explained his reasons for rejecting that. I think there were multiple reasons, not the least of which was it was unsupported by Dr. Ashan's own findings about specifically, for example, the arthritic condition that the claimant has in her hands. She had been examined multiple times. Some abnormalities were noted. She was x-rayed multiple times, but all of those x-rays, especially reading her hands, yielded normal results. So the ALJ felt that those were inconsistent. Also, claimant's own testimony as to her activities would have been inconsistent with the idea that she had to lie down for, say, over six hours in an eight-hour day if she couldn't sit or stand for more than one hour total, or couldn't sit, stand, or walk, I should say, for more than one hour total each. And that seems to be inconsistent with the ability to do the, I think she described them as, light household chores that she said she could do. And I think that was at page 28 in the ALJ's decision. And the plaintiff's own statements about that would have been at pages 176 to 183, a form that she filled out about her activities for Social Security purposes. Apart from Dr. Osheim, there was Dr. DeWitt, who was prior to the relevant period, who said that the claimant couldn't do heavy manual labor. And it's not clear to me, that's at page 24 of the ALJ's decision, it's not clear that she was well-informed about what claimant's past work actually was, although she did say later on that the claimant couldn't do her past work. But the claimant's condition did change in the meantime. I think the claimant had alleged that her condition was worsening. The other doctors that gave opinions would have been the consultative examiners, and the ALJ discussed those as well. Dr. Burgess, who I think was an internist, a specialist in internal medicine, the ALJ gave his opinion some way, but said correctly so that was vague because it didn't get as specific as it could have. I think he said that the claimant had mild to moderate impairment in various work-related tasks, but he didn't actually try to reduce that down to specific numbers. And psychologist Dr. Pardall also examined the claimant, and the ALJ accorded Dr. Pardall's opinion great weight, but not to the extent that she was explicitly basing her opinion on claimant's pain. She did say that a claimant's pain was going to affect her adversely in some ways, but that was a little outside of her psychological expertise, which was directed towards the claimant's mental limitations. So those, or I should say that the state agency physicians, Drs. Clayton and psychologist Dr. Pardall, the opinions I just mentioned, and in fact Dr. Clayton, who gave the opinion of the ability to do medium work essentially, didn't mention Dr. Burgess, but actually quoted findings from Dr. Burgess's report. So Dr. Clayton had all of the evidence in front of him, at least all that existed at that time. And if Dr. Clayton hadn't examined, excuse me, actually examined the any single one of those other physicians had. Except for the body of the claimant. That's true, Your Honor. But there were differing opinions as to that, and when the ALJ is faced with differing opinions, I suppose there's a limited number of things that he could have done. And when you do have an opinion in front of you that does cover most of the limitations and helps to interpret the reports from the doctors, I don't think it's unreasonable to rely on that at all. The ALJ was faced with conflicting evidence here. The ALJ did resolve the conflicting evidence and explained how he did so. The fact that the claimant is unhappy with the ALJ's resulting findings doesn't mean it doesn't make sense. Maybe it doesn't make sense to her, but it just adds up in a certain way. Certain doctors said that she possibly was so limited as to be disabled. Other doctors said that, nope, she's got a certain amount of functional limitations, significant enough, but not so great as to result in a disability. I would say that, backing up again, that the evidence I just discussed, as laid out in the ALJ's decision, as resolved there and explained by the ALJ, constitutes substantial evidence supporting the ALJ's findings as to the claimant's ultimate decision. Going back to the first issue, that should be viewed in the context of the medical opinions. The Medicaid decision is not a medical opinion. I don't think anyone has asserted that. Social Security doesn't treat it that way. It's someone else's interpretation of certain evidence. Again, the ALJ looked at that evidence and more, and the ALJ wasn't bound by that other interpretation of the evidence coming from another state government agency. The ALJ explained that. I think there has to be some kind of line drawn where the agency, Social Security, will look at other opinions, other decisions from non-Social Security organizations. It's not bound by them, but doesn't have to explain beyond reason why those state disability decisions aren't applicable here. Again, I'm not sure what else the ALJ was supposed to say here. He covered everything material about that state disability decision. If there are no further questions, I'm going to move on to the next issue. I think an important point that needs to be made here is some of the language from BIRD itself. The government noted in its brief in an argument that the fact that a lot of the underlying evidence that was looked at by the ALJ as well as the state was overlapping rendered the state's decision somehow superfluous. But as this court noted in BIRD, it was because the VA decisions and the SSA decision in the case involved evaluation of the same conditions and the same underlying evidence that the disability rating by one of the agencies was, quote, highly relevant to a disability determination of the other agency. This is because it's not just the underlying evidence that the analysis performed by the other state agency which needs to be considered and the ALJ needs to explain why he interpreted the evidence so differently. We can't infer that. I mean, as I understand the government's argument is the ALJ found your client's subjective complaints unreliable, assigned them little weight, and then also discounted the testimony of one of the doctors, Dr. Ashims. And the government says that those were the key reasons for the state determination. Why can't we infer that that's the rationale for why the state Medicaid decision was discounted? Because it was done in a very summary way. For instance, the ALJ cites the consultative examination in his medical summary but doesn't explain why she's able to do medium work. The ALJ goes to the substance of the ALJ's decision, not for why he discounted the state Medicaid determination. I'm sorry, I may have misunderstood. I thought that you were talking about the substance of the ALJ's decision and being able to infer from that why he, if he had explained why he weighed the Medicaid decision perhaps. No, that's exactly what I'm suggesting. Yes, sir. And I think that the problem with that is that things are not actually explained in the decision itself. But additionally, going to the treating physician, for instance, he just says that it's inconsistent with the evidence. And he doesn't cite what evidence he thinks is inconsistent with Dr. Ashims' opinion. Going to the CE, he notes that she has this trouble walking, this trouble lifting, the grip strength is reduced on exam, but doesn't then say why medium is more appropriate as opposed to the Medicaid's decision sedentary. There's just too many gaps to be filled in here. And given the great inconsistency between the decisions, the ALJ really needs to specifically explain why he this limited standing aligns better with the sedentary RFC given by the Medicaid decision. It makes his summary assignment of a medium RFC that more disjunct, especially with the disagreement that we have with the treating opinions as well as the specialist opinion. I did want to note that really quickly. What Dr. DeWitt said was that, this is the rheumatologist, was that she would not be able to do heavy manual labor. And at this point with a 10th grade education, it is quite unlikely that she will find a job which does not require the degree of physical activity that she's able to tolerate. That seems to be an indication, a reference to the grids, which was the same logic that the state agency used in finding that she was disabled. She's not going to be able to tolerate more involved activity. And it's repeatedly documented in the record. For instance, when the records leading up to her stopping working, she was showing swelling in her hands, redness, deformity. Her hands have actually been described eight different times in the record by several different doctors as deformed. She has nodes in her hands. Defendant citing her osteoarthritis, she does have osteoarthritis on x-rays. Her x-rays are not normal. While the osteoarthritis is described as mild, her inflammatory arthritis is described as severe by her doctor. She has two different types of arthritis involved here. So, additionally, I'm sorry, did that answer your question? Additionally, talking about BIRD, we're not arguing that BIRD controls in this case, but it's very analysis. Significantly, several district courts have already extended BIRD to Medicaid decisions. And BIRD itself does reference that other governmental decisions, decisions by other governmental agencies cannot be ignored and need to be considered. And some type of explanation, some type of logical bridge, especially in a case like this where the opinions are so divergent, needs to be given. And particularly not in spite of them considering a lot of the same relevant evidence. I think your time has expired. Thank you, ma'am. Thank you very much. We will come down and greet the lawyers and then go directly to our last case.
judges: Diana Gribbon Motz, William B. Traxler, Jr., Albert Diaz